## MARLETT v. WILSON'S Executor.

BOND.—*Repugnant Condition.*—Effect will be given to the intention of the
parties to a bond as indicated by the whole instrument, notwithstanding
repugnant words in the condition.

BASTARD.—*Bond for Maintenance of.*—An obligation for the maintenance of
a bastard, executed to the putative father, accrues exclusively to the ben-
efit of the child, who may maintain a suit thereon in equity.

SAME.—*Liability of Father.*—The only legal liability of the father for the
maintenance of his illegitimate child is for such judgment as may be ren-
dered against him in a prosecution for bastardy under the statute.

APPEAL from the Warren Common Pleas.

FRAZER, J.—The facts shown by the complaint in this
case were, that Wilson, the testator, for a valuable consider-
ation, contracted with one Waymire (who was at the time
prosecuted for bastardy by a daughter of Wilson) to maintain
and support the bastard, which he afterwards failed to do.
The child brought suit upon a penal bond of Wilson for
one hundred and fifty dollars, which recites the facts and
contains the agreement as stated above, acknowledges the
receipt of seventy-five dollars "to support the child,"
releases Waymire from any action or right of action in favor
of Wilson against Waymire in consequence of the latter
having begotten Wilson's daughter with child, and con-
cludes thus: "Now, if the said Wilson shall save the said
Waymire harmless from all damages in supporting, main-
taining, and educating said bastard child, from all suits that
may be hereafter brought against him on account of his
having begotten a bastard child on the body of Isabella
Wilson, then the above obligation to be null and void; else,
to be and remain in full force and virtue in law."

The instrument is awkwardly framed, and was probably
drawn by some one who had a slight knowledge of legal
forms, and but little conception of their signification. It is
contended that the very formal condition with which it
closes confines the contract to the matters therein, and that
Wilson could therefore be held only to indemnify Waymire

from damages which might accrue against him personally for the support and education of the child, and also to indemnify him from suits which might be prosecuted against him on account of his having begotten the child. This construction would effectually nullify the express release by Wilson of rights of action in his own favor, and also his express contract to maintain the child, unless, indeed, a prosecution for bastardy against Waymire should fix the liability of the latter for such support. This would be disregarding the substance of the instrument for the sake of its form, and would, it seems to us, defeat the intention of the parties, as indicated by the whole instrument. Its purpose was, not only to indemnify Waymire against such liability as might be made incumbent upon him, but also to release any right of action held by Wilson against him, so that the release might be pleaded, and also to secure an actual maintenance to the child, and for its benefit. This effect can be given to the instrument, notwithstanding the repugnant words of the formal condition, and will, we think, be abundantly supported by authority. Thus, in *Stockton* v. *Turner*, 7 J. J. Marsh. 192, where the condition was, "if the obligor do not pay," &c., it was held, notwithstanding the negative expression, that the affirmative was intended. So in *Gully* v. *Gully*, 1 Hawks, 20, it was ruled that insensible and contradictory words in the condition of a bond will be rejected, so as to effectuate the intention of the parties. See, also, *Wells* v. *Wright*, 2 Mod. 285; *Wells* v. *Tregusan*, 2 Salk. 463; Shep. Touch. 88.

It remains to consider whether the plaintiff, the child, could maintain the suit, she not being a party to the contract. We have intimated that the agreement to maintain was for her benefit. It was so, unquestionably. Her putative father could derive no benefit from it. He would not be legally liable for her maintenance to those furnishing necessaries to her. His liability would only be for such judgment as might be rendered in a prosecution for bas-

tardy under the statute, and if no such judgment was obtained there would be no liability whatever upon him. The natural obligation of the father to maintain his bastard offspring cannot be enforced as in the case of a legitimate child. The question of paternity must be settled by proceedings for that purpose, and such proceedings determine the whole extent and fix the limits of his legal obligation. The contract to indemnify against any judgment was for the father's benefit, but that for the maintenance of the child was for the exclusive benefit of the latter, and we may suppose that a sense of natural duty inspired it. In such cases there is, in other states, much conflict of decision upon the question whether a party, not known as a contracting party, for whose benefit the contract was made, may maintain a suit upon it in equity, it being generally conceded that at law he cannot for want of privity. In this State we regard the question as settled in the affirmative. *Bird* v. *Lanius*, 7 Ind. 615; *Allen* v. *Davison*, 16 Ind. 416; *Devol* v. *McIntosh*, 23 Ind. 529; *Beals* v. *Beals*, 20 Ind. 163; *Lamb* v. *Donovan*, 19 Ind. 40; *Davis* v. *Calloway*, at this term, *ante* 112.

We think, for the foregoing reasons, that the court below erred in sustaining a demurrer to the complaint.

The judgment is reversed, with costs.

*J. McCabe*, for appellant.

*J. Park* and *L. T. Miller*, for appellee.