CANFIELD v. THE STATE, EX REL. SHEPHERD.

BASTARDY.—*Prosecution for.*—*When may be Instituted.*—A prosecution for bastardy may be instituted against the alleged father, either when the relatrix has become pregnant with, or after she has been delivered of, a bastard child.

SAME.—*Still-Born Child.*—In a prosecution for bastardy, instituted after the birth of the child, an allegation in the complaint, that the relatrix had "been delivered of a bastard child," is not sustained by a finding, that, at the end of the usual period of gestation, she had been delivered of a bastard child whose lungs had "never been inflated with air."

SAME.—*Judgment.*—*Maintenance.*—Upon such finding, a judgment against the defendant, allowing any sum for the maintenance of such child before its birth, is erroneous.

SAME.—*Allowance to Relatrix.*—Upon such finding, an allowance can not be made to the relatrix for her suffering or support during her pregnancy and confinement.

From the Dearborn Circuit Court.

*H. D. McMullen* and *J. Schwartz*, for appellant.

*J. D. Haynes* and *J. K. Thompson*, for appellee.

NIBLACK, J.—This was a prosecution for bastardy, commenced before a justice of the peace, and afterwards certified to the circuit court.

The complaint stated, in substance, that the relatrix, Harriet Shepherd, was, on the 1st day of September, 1874, delivered of a bastard child, and that the appellant was the father of said child.

The defendant appeared in the circuit court, and answered in two paragraphs:

First. In general denial; and,

Second. That said child was not born alive, and that the appellant paid all the lying-in expenses of the relatrix.

To the second paragraph of the answer, there was a general denial in reply.

The cause was submitted to the court for trial, without a jury, and, at the request of the appellant, a special finding, both as to the facts and as to the law of the case, was made by the court.

The court thereupon, after hearing the evidence, made quite an elaborate finding of the facts as proved, and as to the law arising on those facts. So much of the finding, however, as seems to us to have been material to the cause, was, in substance, that on the 1st day of September, 1874, the relatrix was, at the end of the usual period of gestation, delivered of what is known as a " still-born " child, its lungs having never been inflated with air; that the relatrix was, both when the child was begotten and when it was born, an unmarried woman, having never been married; that the defendant was the father of said child; and that, upon these facts, the defendant was liable to the relatrix for the " maintenance " of said child before its birth, in such sum as the court might adjudge reasonable. To this finding the defendant excepted.

The defendant then submitted a motion for a new trial, which was overruled.

He then moved for judgment in his favor on the finding of the court, but that motion was also overruled. Exceptions were reserved to the overruling of both of these motions.

The court thereupon ordered that the defendant should pay the relatrix the sum of one hundred dollars, one-half in six months and the other half in twelve months, and rendered judgment against him, in her favor, for that sum, and that he should stand committed until said sum of money and costs of suit should be paid or replevied, to which an exception was also reserved by the defendant.

The cause is submitted here on the exceptions reserved in the court below.

There are two contingencies in which prosecutions for bastardy may be instituted, and appropriate forms of proceeding are provided for in each case. The first, in its natural order, is, when a woman has become pregnant with a bastard child. The other is, when a woman has already been delivered of such a child. It was under this latter contingency that this case was prosecuted.

On the trial of this cause, it was incumbent on the State to establish two propositions:

*First.* That the relatrix had been delivered of a bastard child, as alleged; and,

*Second.* That the defendant was the father of said child.

In 3 Greenl. on Evidence, sec. 136, it is said : " To support an indictment for infanticide, at common law, it must be clearly proved that the child was wholly born, and was born alive, having an independent circulation, and existence." As to what proof is necessary to show that the child had attained an independent circulation and existence, constitutes a question on which the authorities are not entirely in accord. We think, however, the weight of authority is to the effect that respiration at least must be shown to have taken place. See *The State* v. *Winthrop,* 43 Iowa, 519. Casper says in his Forensic Medicine, Vol. 3, p. 33, " *In foro* the term ' life ' must be regarded as perfectly synonymous with ' respiration.' Life means respiration. Not to have breathed is not to have lived." The rule above laid down by Greenleaf is based on the theory that until a child is wholly born, and has attained an independent circulation and existence, it is but a *fœtus in utero,* and not a human being within the meaning of the law defining the several grades of homicide.

We are of the opinion, both from reason and analogy, that the allegation in the complaint, in this case, that the relatrix was, on a given day, delivered of a bastard child,

is not sustained by the finding of the court, that on that day she was delivered of a "still-born" child, its lungs having never been inflated with air, although illegitimate in its conception and in its birth. We think the finding showed that the *fœtus in utero* never became a child within the meaning of the law authorizing proceedings for the maintenance of bastard children after their birth. It was not born alive, and never had an existence independent of the mother.

But it is insisted that the amount allowed her is not more than reasonable compensation to the relatrix for her suffering and support during her pregnancy and her confinement, and that, upon that view of the case, the judgment of the court below can be sustained. It is argued, that such a compensation is fairly authorized by law, because the relatrix might have commenced proceedings against the defendant during her pregnancy, and thus have secured an allowance in advance, suitable to her condition. We will not attempt to decide what might have been the duty of the court below in this case, if proceedings had been instituted during the pregnancy of the relatrix. What advantages the relatrix might have gained by the institution of such a proceeding can not be considered in aid of any thing not authorized under this prosecution.

It is well settled in our State, that the money recovered in bastardy prosecutions is only intended for the maintenance of the child. *Beeman* v. *The State, ex rel., etc.,* 5 Blackf. 165; *Hunter* v. *The State, ex rel., etc.,* 6 Blackf. 383; *Bright's Adm'r* v. *Sexton,* 18 Ind. 186; *Marlett* v. *Wilson's Ex'r,* 30 Ind. 240.

In the case of *Allen* v. *The State, ex rel., etc.,* 4 Blackf. 122, this court, in construing a statute similar in its main features to the bastardy act now in force in this State, said: "The statute only authorizes, in this proceeding, a judgment against the defendant for such sum or sums of money as the court may direct for the maintenance of the

child, and a judgment for costs. The damages for the seduction of the mother, or the expenses of her lying-in, are not the objects of this kind of prosecution. The law has, in those cases, provided other remedies." We regard the construction of the law thus given as applicable to the case in hearing, and are unable to arrive at any conclusion which will sustain the judgment of the court below.

The judgment is reversed, and the cause remanded, with instructions to the court below, to enter judgment for the appellant, on the finding of that court.